A08A2066. DOVER REALTY COMPANY, INC. v. PECCE.
(671 SE2d 257)

JOHNSON, Presiding Judge.

This case involves the issue of real estate commission due under a listing agreement. Dover Realty Company, Inc. sued Arthur Pecce, Sr., to recover real estate commission it claimed Pecce was obligated to pay pursuant to a listing agreement. Pecce filed a motion for summary judgment, which the trial court granted, and Dover Realty appeals. We find no error.

On appeal from the grant of summary judgment, this court applies a de novo review of the evidence to determine whether any question of material fact exists.[1] Summary judgment is appropriate where the moving party can demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[2] A defendant meets this burden by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . All of the other disputes of fact are rendered immaterial."[3]

The record in the present case reveals that on March 6, 2004, Pecce and Dover Realty entered into a listing agreement to sell approximately 16 acres of land owned by Pecce. The agreement granted Dover Realty the exclusive right and power to sell the property, with the following stipulation: "Seller retains right to obtain private buyer provided no prior contact was issued by, or through any means of Dover Realty." Sandra Thomas, an agent for Dover Realty, explained to Pecce that the stipulation meant that if Pecce obtained a buyer and entered into a contract he negotiated himself, he would not be obligated to pay commission to Dover Realty; Pecce was only obligated to pay commission if Dover Realty produced a contract negotiated by Dover Realty and signed by a

---

[1] *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).
[2] OCGA § 9-11-56 (c).
[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

buyer, at either the $18,000 per acre price or such other price and terms agreed to by Pecce, with the sale to that buyer being consummated pursuant to the terms of the contract.

On March 15, 2004, Royce Grant, the president of Mandalay Properties, Inc., wrote Pecce a letter stating that he noticed the property on Henry County tax maps and was interested in purchasing the property. Grant subsequently met with Pecce and prepared a real estate sales contract to purchase the property for $16,172.83 per acre. Pecce and Grant, as president of Mandalay Properties, signed the contract on March 24, 2004. At no time prior to the signing of the contract did Grant have any contact with Dover Realty, and it is undisputed that Dover Realty did not show the property to or negotiate the contract with Mandalay Properties.

Subsequent to the execution of the contract between Pecce and Mandalay Properties, Dover Realty presented a sales contract signed by Jimmy Joyner to Pecce. This contract offered to buy the property for $16,700 per acre. Pecce signed the contract on March 25, 2004, with the following notation: "This contract can serve as a back up contract if the first contract does not go through with Royce Grant."

During the next few weeks, Grant independently sought out Joyner, who had purchased property across the street from the Pecce property, to see if Joyner would be interested in buying the contract he had negotiated with Pecce. On April 12, 2004, Mandalay Properties (through Grant) and BKJ Properties (through Joyner) signed an Assignment of Purchase and Sale Agreement Rights whereby Mandalay Properties' rights in the contract with Pecce were assigned to BKJ Properties for $16,200. Pecce was not notified of the assignment until he attended the scheduled closing. The record is undisputed that Dover Realty did not have any involvement in Grant finding Joyner as a potential buyer or in the assignment of rights between the parties. In fact, Dover Realty was never notified of the assignment until after the property closed.

On May 25, 2004, the property was sold to BKJ Properties for the sum of $16,172.83 per acre pursuant to the contract with Mandalay Properties. Dover Realty did not attend the closing, and there was no indication on the settlement agreement that any broker was involved in the transaction. Dover Realty contends Pecce owes real estate commission since the property was sold to a buyer procured by Dover Realty. We disagree.

This case is controlled by *Dolvin Realty Co. v. Jones*,[4] which involves a virtually identical factual scenario. While Dover Realty asks us to overrule that case, we decline to do so. Under *Dolvin*

---

[4] 63 Ga. App. 351 (11 SE2d 105) (1940).

*Realty*, Pecce, having entered into a contract, was bound to abide by the contract, whether the contract was ultimately signed by the original purchaser or an assignee. Our earlier decision correctly points out that the effect of the transaction was the same as if Pecce first sold the property to Mandalay Properties and then Mandalay Properties sold the property, by a separate transaction, to BKJ Properties, in which event Dover Realty clearly would not have had a right to commission from Pecce, the original owner.

Here, there is no dispute that Dover Realty did not negotiate the contract with Pecce that ultimately closed. There is also no evidence of bad faith, fraud, collusion, or any lack of good faith in the contract between Pecce and Mandalay Properties. The fact that Grant, acting for Mandalay Properties, subsequently assigned the contract to another purchaser is irrelevant since Pecce was obligated to abide by the contract with Mandalay Properties. And, clearly, no commission was due under the contract with Mandalay Properties. The trial court did not err in granting summary judgment to Pecce.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED DECEMBER 12, 2008.

*Fears, Lawrence & Turner, Kenneth G. Lawrence, Douglas R. Ballard, Jr.*, for appellant.
*Brown & Brown, George T. Brown, Jr.*, for appellee.